IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHELBY J. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:99cv734-M |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Shelby J. Stewart ["Stewart"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) (2000). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

Stewart contends that she became disabled on 1 July 1987 due to trouble with her "ankle and legs," hypertension, diabetes and carpal tunnel syndrome (R. 81). She has an eighth grade education and has never received a high school diploma or equivalent thereof (R. 40-41). Prior to her alleged onset date, Stewart worked in a school cafeteria in Fort Rucker, Alabama (R. 41). Her previous work history also included serving food at a Dairy Queen and working in a nursing home (R. 85).

This case is before the court for the second time. After her application was denied

initially and on reconsideration, Administrative Law Judge ["ALJ"] Michael Brownfield found that she was not disabled at any time while eligible for disability insurance benefits (R. 13-22). Stewart filed a civil action in this court, which remanded the case to allow the Commissioner to consider the opinion of Stewart's psychologist, Dr. Sandra E. Cline ["Cline"], who diagnosed Stewart with "major depression, recurrent, moderate" after the ALJ issued his opinion (R. 198, 202). According to Dr. Cline, Stewart's depression began 10 years prior to her evaluation, when Stewart was eligible for benefits.

On remand, ALJ Ricardo M. Ryan revisited Stewart's case to determine whether she was disabled during the relevant time period, taking into consideration Dr. Dr. Cline's opinion.[1] He concluded that Stewart was not disabled, and Stewart reopened this case to allow the court to review his opinion.[2]

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court

---

[1] All of the references to "ALJ" in this opinion are references to Ricardo Ryan.

[2] The court retained jurisdiction because the remand was pursuant to sentence six of 42 U.S.C. § 405(g). *See **Shalala v. Schaeffer***, 509 U.S. 292, 296-300 (1993); ***Melkonyan v. Sullivan***, 501 U.S. 89, 102 (1991); ***Jackson v. Chater***, 99 F.3d 1086, 1094 (11th Cir. 1996) (describing ***Melkonyan*** and ***Schaefer*** as holding that "a sentence-six remand continues jurisdiction in the district court").

must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[3] This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).

### III.  DISCUSSION

*A.  Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2004); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2004).

---

[3]In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The court's previous opinion discussed in detail the five-step sequential evaluation the Commissioner must undertake to determine whether a claimant qualifies for disability benefits. In this case, the claimant's challenges require the court to address only the second step, the determination of whether the claimant suffers from a severe impairment (i.e., a medically determinable condition that significantly limits the claimant's ability to perform basic work-related activities) that has lasted or is expected to last 12 months or more. §§ 404.1509, 404.1520(a)(4)(I)-(ii). Therefore, a broader discussion of the evaluation is unnecessary.

### B.   *The ALJ's Relevant Findings*

After discussing the legal standards and the evidence in the record, the ALJ determined that Stewart met the insured status requirements from her alleged onset date until 31 March 1991 and proceeded to make the following relevant findings:

> 1. The claimant did not engage in substantial gainful activity during the period for consideration.
>
> 2. During the pertinent period for review, the claimant had the severe impairment of borderline intellectual functioning that imposed a significant limitation on her ability to perform some basic work activities.

(R. 216). He then determined that because her intellectual functioning was no different than before her onset date, when she was able to perform the functions of a food server, she could return to that position and was, therefore, not disabled. *Id.*

Presupposing that she suffers from depression sufficient to constitute a disability,

Stewart contends that the ALJ erred by requiring objective evidence to establish "within a degree of certainty" the onset date of her disabling impairment (Doc. # 24, pp. 12-16).[4] She also contends that the ALJ failed to develop the record fully when he refused to allow Stewart to testify at the second hearing (Doc. # 24, p. 16).  Finally, she contends that the ALJ erred by failing to make specific findings regarding her obesity.  Each of her arguments is meritless.

### C.     *Stewart's Alleged Depression*

As already noted in footnote 3, Stewart's first argument regarding her depression, that the ALJ imposed an improper evidentiary standard when determining the onset date of her alleged disabling depression, ignores the elephant in the room: the ALJ made no findings regarding her current depression.  He properly limited his review of Stewart's case to determining whether she was disabled during her insured status period.  20 C.F.R. §

---

[4]The following sentence from Stewart's brief aptly illustrates her misapprehension of the ALJ's well-reasoned and thoroughly explained opinion in this case:

> The ALJ relied on his own opinion to determine that Stewart did not become disabled until after her insured status expired.

(Doc. # 24, p. 15).

Contrary to Stewart's apparent understanding, however, throughout his opinion and to an almost nauseating extent, the ALJ emphasized that his review of her case was limited to determining whether she was disabled *during* the period of her insured status, which expired 31 March 1991 (R. 208).  How Stewart or her counsel could possibly interpret the ALJ's opinion as having worked backwards by first determining whether she was currently disabled and then deciding on an onset date is beyond comprehension.  In short, the ALJ never determined that Stewart became disabled, either before or "after her insured status expired".

404.315(a); *see*, *e.g.*, **Jones v. Comm'r of Soc. Sec.**, 48 Fed. Appx. 369, 370 (3d Cir. 2002) (describing the second-step in a disability evaluation as determining whether the claimant "has a 'severe impairment' disabling her *while she met the status requirements*").

Generally, a claimant's alleged impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 1508. In this case, the relevant medical evidence can be summed up more or less accurately by quoting directly from Stewart's own brief:

> Notes from Dr. [B. Dowling] Petrey indicate Stewart had a long history of right carpal tunnel syndrome symptoms.[5] In 1987 her weight was around 220 pounds.[6] 1988 notes indicate she had

---

[5]This could be described more accurately as a "distant history"; the records referred to are dated from the early 1970s, and Stewart herself testified that the relevant carpal tunnel surgery occurred 15 to 20 years prior to her first hearing before the ALJ, which occurred in 1997 (R. 53).

[6]Stewart does not cite to the record in support of this statement, and its inaccuracy, though not shocking, nevertheless evidences her and, perhaps, her counsel's willingness to play fast and loose with the evidence in this case. According to records from Dr. Petrey, which constitute the only medical records created during the relevant period, on 23 February 1987, more than four months before her alleged onset date, Stewart weighed 217 3/4 pounds (R. 164). On 22 June of the same year, her weight had decreased to 212 3/4 (R. 165).

Throughout most of the relevant period, her weight was less than 220 pounds, ranging from 206 ½ to 216 pounds (R. 163-65). Only toward the end of her insured status period did her weight climb to above 220. Although the month of the record is not legible, at some point in 1990 she weighed 221 3/4 pounds (R. 163) and in 1991 a notation indicated that she weighed 225 pounds. *Id.*

>lost some weight (210). 1989 notes indicate x-rays showed a
>chip fracture of the right ankle. She continued to be overweight
>and hypertensive.[7]

(Doc. # 24, p. 5). Thus, Stewart's own description of her relevant medical records indicate no psychological impairment during the relevant period.[8]

Ignoring this fact, Stewart relies on Dr. Cline's quite dubious opinion that her depression, which was first diagnosed in 1998 (R. 198), began 10 years prior to Dr. Cline's first psychological exam (Doc. # 24, pp. 7-16).

A treating physicians' opinion is accorded "substantial or considerable weight unless good cause is shown . . .." ***Phillips v. Barnhart***, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting ***Lewis v. Callahan***, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when, for example, "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.

After discussing Dr. Cline's report, the ALJ stated:

---

Importantly, her weight throughout her insured status period did not differ significantly from her weight several years prior to this period. Her weight first reached 200 pounds on 26 January 1982 (R. 166). Later that same year, she weighed 204 pounds, and by 1985 her weight had climbed as high as 214 1/2 pounds. *Id.*

[7]Although Stewart uses the medical term "hypertensive," she does not contest the ALJ's implicit finding that her hypertension was not a severe impairment.

[8]In April 1993, more than two years after her insured status had expired, Dr. Petrey prescribed Prozac, but his handwritten notes, which are barely legible, do not make clear his reason for this prescription (R. 161). He did note, however, that she complained of lethargy and insomnia, though this was the first such indication in his records. *Id.*

> The undersigned has fully considered the issue of the claimant's potential mental impairments pursuant to the order of remand, but is unable to detect objective evidence of depression or any other symptomatology on the part of the claimant prior to March 31, 1991. Despite the fact that the claimant reported mental health symptoms for the previous ten years to Dr. Cline, there is no evidence that the claimant obtained specific treatment for depression or was placed on medication for depression between her alleged onset of disability and the expiration of her insured status for benefits. The claimant, herself, informed Dr. Cline that she received treatment for mental health symptoms from Dr. Covin in March 1997, some six years after the expiration of her insured status for receipt of benefits. The claimant additionally informed Dr. Cline that she received treatment for mental health symptoms two to three years prior to her evaluation (which would have been no earlier than 1995, still significantly later than her expiration for Title II eligibility.) Based on the foregoing, and after having provided the claimant full opportunity to provide any and all documentation suggestive of a mental health condition prior to March 31, 1991, the undersigned is unable to find objective corroboration both for the claimant's assertions of mental health symptomatology for the eight to ten year period prior to Dr. Cline's evaluation in April 1998 and for the claimant's assertions of a significant impairment prior to the expiration of her insured status for Title II benefits.

(R. 214).

Although the court required the Commissioner to consider Dr. Cline's opinion, it did so primarily because the Social Security Administration's Appeals Council apparently ignored the fact that Dr. Cline's opinion related her depression to the relevant period (R. 245). The court's remand neither explicitly nor implicitly endorsed Dr. Cline's opinion, however. Thus, the ALJ's decision to give no weight to Dr. Cline's opinion regarding the duration of Stewart's alleged psychological impairment was proper and is supported by

substantial evidence in the record.[9]

Consequently, the issue of an onset date, on which Stewart expends most of her paper, ink, and, presumably, time, is a red herring. The ALJ need not determine the onset of a condition that for practical purposes did not exist, and the legal authority on which Stewart relies is unavailing.[10]

---

[9]Stewart also contends that the ALJ erred by refusing to allow her to testify at the second hearing despite being provided ample opportunity to discuss all of her alleged impairments at the first hearing. She has not cited to any legal authority suggesting that the ALJ was required to allow her to try again, and the court does not believe that the ALJ was required to give Stewart another bite at the apple.

In addition, Dr. Cline's diagnosis was based on Stewart's subjective statements (R. 198-202, 220-238), and the ALJ's discussion of the evidence is sufficient to discredit any testimony Stewart may have offered.

The two-part test established by the Eleventh Circuit Court of Appeals for the purpose of evaluating a claimant's subjective complaints requires evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." **Holt v. Sullivan**, 921 F.2d 1221, 1223 (11th Cir. 1991). No weight need be given to subjective complaints that do not satisfy the pain standard. *See*, *e.g.*, **Butler v. Barnhart**, 347 F. Supp. 2d 1116, 1123 (M.D. Ala. 2003).

In this case, there is not evidence of record which is probative of an underlying psychological condition during the relevant time period, and nothing Stewart could have said would change this fact. Therefore, if the ALJ's failure to allow her to testify was error, it was harmless. **Williams v. Barnhart**, 140 Fed. Appx. 932, 936-37 (11th Cir. 2005) (finding that the ALJ's error was harmless because it would not have altered the outcome); **Edwards v. Sullivan**, 937 F.2d 580, 586 (11th Cir. 1991) (noting that finding an error was not itself sufficient, stating, "We must examine the record to determine whether [the plaintiff] was prejudiced" thereby); **Ware v. Schweiker**, 651 F.2d 408, 412 (5th Cir. July 24, 1981) (stating that remand "would be a wasteful corrective exercise" when "no further findings could be made that would alter the ALJ's determination," which was erroneous; "Judicial review is not for the purpose of exacting punctilio but to assure that the Secretary's determination does not trespass the statute.").

[10]Stewart first cites to Social Security Ruling 83-20, which defines "onset date" as "the first day an individual *is disabled* as defined in the Act and the regulations." Soc. Sec. R. 83-20 (1983)

9

**D.** *Stewart's Obesity*

Stewart contends that the ALJ erred because he did not find her obesity to be a severe impairment and did not discuss the effects of her obesity on her alleged arthritis and degenerative joint disease, which she admits was not diagnosed until after her insured status expired, or her mental impairment, which, as already discussed, did not exist during the relevant period (Doc. # 24, pp. 16-18).

As with her alleged mental impairment, there is no evidence in the record indicating that Stewart's weight resulted in any functional limitations whatsoever. To the extent a limitation could be inferred, the record clearly indicates that Stewart's weight after her alleged onset date did not differ significantly from her weight before her alleged onset date when she worked as a food server. Therefore, even if the court assigned error to the ALJ's failure to find that Stewart's obesity was a severe impairment, the error is harmless.

For the reasons the court has already discussed, Stewart's arguments that the ALJ should have considered the effects of her obesity on conditions that did not exist during the relevant period are without merit.

---

(emphasis added). Notably, the ruling states that "[a] title II worker *cannot* be found disabled under the Act *unless insured status is also met at a time when the <u>evidence establishes the presence of a disabling condition(s)</u>*." *Id.* (emphasis added). *See* **Blake v. Massanari**, No. CIV. A. 00-0120-AH-L, 2001 WL 530697, at * 10 (S.D. Ala. Apr. 26, 2001) (describing ruling 83-20 as addressing "the circumstance wherein a plaintiff is found to be disabled and the onset date must be inferred" and noting that "[t]he premise behind this ruling is that the ALJ has found the person disabled").

**Bailey v. Chater**, 68 F.3d 75 (4th Cir. 1995), and **Spellman v. Shalala**, 1 F.3d 357 (11th Cir. 1993), on which Stewart also relies, both concerned challenges to the ALJ's determination of an onset date *after* having determined that the claimant was disabled.

With only Dr. Petrey's handwritten records to support her claims, Stewart's persistence in pursuing disability insurance benefits is mystifying. Her view of the facts is skewed, and her legal arguments indicate either an intent to obfuscate or excessive confusion by herself and her counsel. Regardless of how this case has proceeded to this point, it clear that it should proceed no further. Stewart has failed to point to any prejudicial error, and the ALJ's opinion is strongly supported by substantial evidence in the record.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

DONE this 4th day of January, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE